# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| LISA ETHEREDGE, | )<br>)<br>) Civil Action No. 1:12-0165 |
| To | ) Chief Judge Haynes |
| CHARLES GENE ETHEREDGE, SR.,<br>ETHEREDGE DEVELOPMENT, INC.,<br>ETHEREDGE MANUFACTURING<br>COMPANY, INC. | )<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

Plaintiff, Lisa Etheredge, an Alabama citizen, filed this action under 28 U. S. C. § 1332, the federal diversity jurisdiction statute, against the Defendants: Charles Etheredge, Sr., Etheredge Development, Inc. and Etheredge Manufacturing Inc., Tennessee citizens. Plaintiff asserts various state law claims alleging that the Defendant Charles Etheredge Sr. is engaged in self dealing and is manipulating the financial affairs of closely held and related corporations in which Plaintiff is a shareholder. Plaintiff owns 98% of the shares of St. Joseph Casking Company and 95% of the shares of Etheredge Trucking. Plaintiff is a minority shareholder in the Defendant Etheredge Development. Plaintiff acquired these shares as the result of her spouse's death. Defendant Charles Etheredge is Plaintiff's father-in- law. Since her spouse's death, Plaintiff alleges that Defendant Charles Etheredge has limited Plaintiff to a salary and has not paid any dividends or distributed any profits from the companies in which she is a shareholder.

Before the Court is Defendants' Etheredge Development Corporation and Etheredge Manufacturing Company's motion to quash or modify the subpoenas to Martin MaGuire and Irving

1

Fentress (Docket Entry No. 31) and Defendant Charles Gene Etheredge, Sr.'s motion to quash subpoenas to Martin MaGuire, Irving Fentress, and Merrill Lynch. (Docket Entry No. 33). Plaintiff's subpoenas seek company and financial records of Iron Stamping Inc. of which Defendant Charles Etheredge owns 100% of the stock as well as the financial and business records of Charles Etheredge Sr. and the late Catherine Etheredge, including records from their attorneys and accountants sent to Merrill Lynch.

In their motions, the Defendants assert, in sum: (1) that Martin MaGuire and Irving Fentress are their certified public accountants and the accountant-client privilege under Tennessee law prohibits their accountants from producing the documents responsive to Plaintiff's subpoenas; (2) that the documents requested in Plaintiff's subpoena are irrelevant because these requests are for documents that precede January 1, 2010, when Plaintiff became a shareholder in Etheredge Development and Etheredge Manufacturing; (3) that Plaintiff's request for information regarding Iron City Stamping and Catherine Etheredge and her estate are beyond the scope of this action; (4) that the subpoena to Merrill Lynch is simply a fishing expedition into Defendant Charles Etheredge, Sr.'s personal financial records; and (5) Defendants assert the attorney client and work product privileges as barring Plaintiff's requests.

In response, Plaintiff contends, in essence: (1) that her complaint sets forth allegations of a pattern of self-dealing and mismanagement of Plaintiff's assets by Defendant Charles Etheredge, Sr., (2) that Defendant Charles Etheredge's management of the various Etheredge entities, including Iron City Stamping, as well as the management of Lisa Etheredge's estate is relevant for discovery purposes; (3) Defendants' conclusory objections of irrelevancy are legally insufficient, (4) that Plaintiff's husband died intestate on January 31, 2008, giving Plaintiff an equitable interest in these

companies at that time; (5) the accountant-client, attorney client and work product privileges are not properly asserted and cannot bar disclosure to Plaintiff as a shareholder in several of these companies; and (6) that Plaintiff's expert's affidavit justifies the need for historical financial data to perform his comparative analysis of these companies' financial value over the years of Plaintiff's claims. By attachments to her motion, Plaintiff identifies the virtual total lack of information that the Defendants provided in their responses to her discovery requests. (Docket Entry No. 39-7, 39-8 and 39-11)

Federal Rule of Civil Procedure 45(c)(3)(A) authorizes a motion to quash or modify a subpoena that "requires disclosure of a privileged or protected matter; or (4) subjects a person to an undue burden" or would require disclosure of a trade secret or confidential research. Fed. R. Civ. P. 45(c)(3)(B).

### 1. Plaintiff Discovery Rights as a Shareholder

Plaintiff's subpoenas are directed to Iron Stamping of which Plaintiff is not a shareholder, Plaintiff, however, is a shareholder of St. Joseph Stamping, Etheredge Trucking, Etheredge Development and Etheredge Manufacturing. Plaintiff's complaint alleges that the financial affairs of Iron Stamping are intermingled with the several related family corporations in which Plaintiff owns stock. Plaintiff alleges that these family controlled entities are allegedly mismanaged, manipulated and controlled by the Defendant Charles Etheredge Sr. in breach of his fiduciary duty to Plaintiff as a shareholder in several of these companies.

To the extent that Plaintiff is a shareholder in these related corporations, Tennessee has several statutes that govern a shareholder's request for corporate records:

> (a) A shareholder of a corporation is entitled to inspect and copy, during

regular business hours at the corporation's principal office, any of the records of the corporation described in § 48-26-101(e), if the shareholder gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy.

(b) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation, if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy:

>  (1) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under subsection (a);
>
>  (2) Accounting records of the corporation; and
>
>  (3) The record of shareholders.

(c) A shareholder may inspect and copy the record described in subsection (b) only if:

>  (1) The shareholder's demand is made in good faith and for a proper purpose;
>
>  (2) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and
>
>  (3) The records are directly connected with the shareholder's purpose.

Tenn. Code Ann. § 48-26-102 (a) through (c).

For the corporation's failure to honor a shareholder's request for such corporate information

Tenn.Code Ann. § 48-26-104 (2002) provides:

(a) If a corporation does not allow a shareholder who complies with § 48-26-102(a) to inspect and copy any records required by that subsection to be available for inspection, a court of record having equity jurisdiction in the county where the corporation's principal

office ... is located may summarily order inspection and copying of the records demanded at the corporation's expense upon application of the shareholder.

(b) If a corporation does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with § 48-26-102(b) and (c) may apply to the court of record having equity jurisdiction in the county where the corporation's principal office ... is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

(c) If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable counsel fees) incurred to obtain the order if the shareholder proves that the corporation refused inspection without a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.

(d) If the court orders inspection and copying of the records demanded, it may impose reasonable restrictions on the use or distribution of the records by the demanding shareholder.

Tenn. Code Ann. § 48-26-104 (a) through (d)[1]

---

[1] The other pertinent statutes are:
Tenn. Code Ann. § 48–26–101. Required records.

(a) A corporation shall keep as permanent records minutes of all meetings of its shareholders and board of directors, a record of all actions taken by the shareholders or board of directors without a meeting, and a record of all actions taken by a committee of the board of directors in place of the board of directors on behalf of the corporation.
(b) A corporation shall maintain appropriate accounting records.
(c) A corporation or its agent shall maintain a record of its shareholders, in a form that permits preparation of a list of the names and addresses of all shareholders, in alphabetical order by class and series, if any, of shares showing the number, class, and series, if any, of shares held by each shareholder.
(d) A corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.
(e) A corporation shall keep a copy of the following records at its principal office:

    (1) Its charter or restated charter and all amendments thereto currently in effect;
    (2) Its bylaws or restated bylaws and all amendments to them currently in effect;
    (3) Resolutions adopted by its board of directors creating one (1) or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;
    (4) The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three (3) years;

The Tennessee Court of Appeals has held that under the Tennessee corporation statutes, "the plain language of the statute appears to grant the right to inspect a corporation's records only to the shareholders of that corporation itself—not to the shareholders of the parent corporation" Panitz v. F. Perlman & Co., Inc.173 S.W.3d 421, 428-29 Tenn. Ct. App. 2004). Under Tennessee law, prior to and since enactment of the corporation statutes, a shareholder's request for corporate records could be denied, if found to be for an improper purpose. Wood v. Myers Paper Co, 1926 WL 2028 at *7, 3 Tenn. App. (Tenn. Ct. App. June 25, 1926). To deny a request, the corporate management must show a just reason for their denial or an improper purpose of such a stockholder request, Hillhaven Corp, 565 S.W.2d at 211-212 (Tenn. 1978) or "as to harm it might suffer" as a result of granting the shareholder's request. City of Franklin v. Middle Tennessee Elec. Membership Corp.,No. M2007-1060-COA-R3-CV, 2009 WL 2365572 at * 8 (Tenn.Ct.App. July 31, 2009). For example, request of corporate records to benefit a shareholder's competitive advantage can be grounds to deny such a request. See Wood, 1926 WL 2028 at *7,

The corporation bears the burden to prove an improper purpose. City of Franklin, 2009 WL 2365572 at * *6-7. "The fact that the request is being made by a stockholder or member who disagrees with the policies of the management of the corporation, or even has filed suit against the corporation, is not sufficient to defeat the request." Id. at * 4 (quoting Delaney v. Santa Fe Healthcare, Inc., 741 So.2d 595, 598 (Fl. App.1999) with other citations omitted). Those decisions

---

(5) All written communications to shareholders generally within the past three (3) years, including any financial *428 statements prepared for the past three (3) years under § 48–26–201;
(6) A list of the names and business addresses of its current directors and officers; and
(7) Its most recent annual report delivered to the secretary of state under § 48–26–203.

did not involve any privilege or waiver issues.

Under the circumstances here, the Court concludes that Plaintiff is not a shareholder in Iron Stamping and under Tennessee corporation statutes, Plaintiff does not have the statutory right to the records of Iron Stamping. Absent a factual showing that the companies in which Plaintiff is a shareholder, exchanged company records with Iron Stamping, Plaintiff cannot rely on Tennessee corporate statutes for Iron Stamping documents.

### 2. Relevancy Objections

As to the relevancy objections, Plaintiff seeks the Defendants' financial documents from 2004 to present and in support of her request submitted the affidavit of her expert, a certified public accountant who is experienced in business evaluations. Plaintiff's expert states that in his experience, data from 2004 is necessary to perform his comparative analysis of whether the Defendants have undertaken measures that devalued Plaintiff's shares or deprived Plaintiff of expected dividends or a share of the companies' profits.(Docket Entry No. 39, Exhibit F thereto). Plaintiff's allegations are that Defendant Charles Etheredge Sr. used the corporate Defendants and other related entities to engage in a fraudulent scheme to deprive Plaintiff of her rights and interests in her shares in the Etheredge entities and that this scheme involved the manipulation of Catherine Etheredge's estate and his management of Iron City Stamping, Inc.'s dealings with the other Etheredge corporate entities. (Docket Entry No. 1, Complaint ¶ 73) Defendants contend that Plaintiff did not acquire her shares until 2010 and the estate of Catherine Etheredge is beyond the scope of the issues in this action.

The relevancy standard for discovery is whether the requested information is "relevant to any party's claim" or "will lead to the discovery of relevant information". Fed. R. Civ. P. 26(b) and

advisory committee notes at 146 (West. 2013 Ed.). Given the allegations that Defendant Charles Etheredge Sr. controls these closely held corporations, owns 100% of Iron Stamping, controls the estate of Catherine Etheredge and has not distributed any profits or dividends to Plaintiff since 2008 or 2010, the Court concludes that records and financial information about Iron Stamping and Catherine Etheredge estate will lead to the discovery of information relevant to Plaintiff's claims.

As to the time period of Plaintiff's subpoenas, in the Court's experiences, a five year period prior to Plaintiff's acquisition of shares in 2010 would provide an adequate information on the economic performance of the firms. Given that these entities are interlocking and share a common management, the Court concludes that this information is relevant to Plaintiff's claims.

### 3. Defendants' Assertions of Privilege

Here, the Defendants assert the accountant-client, attorney-client and work product privileges to bar the discovery sought by Plaintiff's subpoenas. Fed. R. Civ. P. 26(b)(5)(A)(ii) requires that for any privilege, the Defendants must "describe the nature of the documents, communications, or tangible things not disclosed- and to do so in a manner that, without revealing information itself privileged or protected, will enable the party to assess the claim". In other words, to assert any privilege, the Defendants had to prepare and serve a privilege log, and their failures to do so constitute waivers of these privileges. Carfagno v. Jackson National Life Ins., No. 5:99cv118, 2001 WL 34059032 at * 2 (W.D. Mich. Feb 13, 2001) (("Defendant's failure to provide the court with sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity") (citing inter alia United States v. Construction Prod. Research Inc., 73 F.3d 464, 473-74 (2d Cir. 1996) and Smith v. Dow Chemical Co., 173 F. R. D. 54, 57-8 (W. D. N. Y. 1997).

Moreover, "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege". Onebeacon Ins. Co. v. Forman Int'l. Ltd., No.04 Civ. 2271(RWS), 2006 WL 3771010 at * 7 (S. D. N. Y. Dec.15, 2006) (collecting numerous authorities).

Here, the Defendants' responses to Plaintiff's motion and to Plaintiff's discovery requests for similar information fail to provide any information to enable the Court to determine the appropriateness of the privileges asserted for information that the Defendants provided to Merrill Lynch. Under Tennessee law, "[t]he attorney client privilege is not absolute, nor does it cover all communications between a client and his or her attorney". Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002). Moreover, "a client may waive the privilege ... by communicating in the presence of others who are not bound by the privilege" Id. Thus, the Court concludes that any financial documents and information disclosed in the ordinary course of the Defendant Charles Etheredge's business to persons other than accountants and attorneys are not privileged. As to those entities or individuals who are or were accountants or counsel for Defendant Charles Etheredge, the estate of Catherine Etheredge and/or Iron Stamping, Defendants have not provided the requisite information nor the privilege log required by Rule 26(b)(5)(A)(ii) Thus, the Court concludes that the Defendants' failures to do so constitute waivers of all privileges asserted in their motions to quash.

As to these waivers, the accountant privilege is a state law privilege created by under Tenn. Code Ann. § 62-1-116(a) that provides as follows:
> (a) Licensees shall not divulge, nor shall they in any manner be required to divulge, any information that is communicated to them or obtained by them by the reason of the confidential nature of their employment. The information shall be deemed confidential; provided, however, that nothing in this subsection (a) shall be construed as prohibiting

the disclosure of information required to be disclosed by the standards of the public accounting profession in reporting on the examination of financial statements or as prohibiting disclosures in investigations or proceedings under this chapter, in ethical investigations conducted by private professional organizations or in the course of peer reviews, or to other persons active in the organization performing services for that client on a need to know basis or to persons in the entity who need this information for the sole purpose of assuring quality control. Disclosure of confidential information pursuant to this subsection (a) shall not constitute a waiver of the confidential nature of the information for any other purpose.

Under Tennessee law, the accountant-client privilege belongs to the client, Powell v. Community Health Systems, Inc., 312 S.W.3d 496, 512 (Tenn. 2010); Fed. Ins. Co. v. Arthur Andersen & Co., 1990 WL 73924 (Tenn. Ct. App. June 6, 1990). The president of a corporation and its subsidiaries can waive this privilege. Arthur Andersen & Co., 1990 WL 73924 at *2. As the sole shareholder in Iron Stamping and the alleged manager of Katherine Etheredge's estate, Defendant Charles Etheredge can assert this privilege, but he failed to do so in accordance with Fed. R. Civ. P. 26(b)(5)(A)(ii).

As to the attorney client and work product privileges for corporations, the Court's research has not revealed any Tennessee precedent on whether a shareholder of a corporation or company can waive the attorney client privilege. The federal decisions on a corporation's assertion of a privilege vests the right to waive a corporate privilege with the corporation's management. See Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348 (1985) ("as an inanimate entity, a corporation must act through agents.... for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course,

must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"). In a decision arising out of Tennessee, the Sixth Circuit established an exception to this rule where a minority shareholder who owned 40% of the shares of a corporation and was without any alternative means to obtain the relevant information, was granted access to corporate records despite assertions of the attorney client privilege. Fausek v. White, 965 F.2d 126, 130-33 (6th Cir. 1992).

The party asserting the privilege has the burden of establishing the privilege's existence. United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999). The attorney-client privilege may be "waived by voluntary disclosure of private communications by an individual or corporation to third parties." Id. As reflected in Boyd general rule, Tennessee courts follow federal decisions on attorney client privilege. 88 S.W.3d at 212, 213-14.

Applying these principles, the Court concludes that as a non-shareholder Plaintiff cannot waive Iron Stamping's attorney client privilege. The Court concludes that as the controlling shareholder of St. Joseph and Eldridge Trucking, Plaintiff is entitled to waive any privilege attached to communications concerning those entities. As to the corporate Defendants Etheredge Trucking, family related companies and estate of Catherine Etheredge, Defendant Charles Etheredge, as the manager and controlling person over those entities, could have asserted the attorney client and work product privileges, but failed to do so as required by Fed. R. Civ. P. 26 (b)(5)(A)(ii). Thus, the Court concludes that the Defendants waived these privileges.

For these reasons, the Court concludes that Defendants' motions to quash the subpoena issued to Irving Fentress, Martin Maguire, and Merrill Lynch (Docket Entry Nos. 31 and 33) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this 12th day of August, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court.